IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:23-CR-**81** |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| HUNTER G. MELLO | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. From at least January of 2017 until in or about August 2020, Hunter G. Mello (the "Defendant") did knowingly combine, conspire, confederate, and agree with others known and unknown, to commit the offense of wire fraud, all in violation of Title 18, United States Code, Section 1349.

2. Defendant joined and participated in the conspiracy while knowing its unlawful aim.

3. A "pop-up" was advertisement-supported software ("adware") often of a malicious nature, that temporarily locked victims' computers and displayed a message directing victims to contact a toll-free number of technical assistance for removal. Pop-ups often include inflammatory and misleading representations of diagnosing systemic network infirmities, including viruses and instances of hacking, all in an effort to delude victims into seeking costly technical assistance.

4.     "Tech-support fraud" are multi-level operations that, at their core, involve material misrepresentations of viruses or other network infirmities on victims' computers. One level involves "lead generation," which is the publishing of malicious pop-ups in the furtherance of tech-support fraud. Companies that create and distribute these pop-ups are generally known as lead generators or, more commonly, "publishers," and the leads generated are actually blocks of calls spawned by pop-ups. In this sense, tech-support leads are, in reality, potential victims who dial toll-free numbers that appear on the malicious pop-ups. Once a victim makes contact with a call center, a company technician then defrauds the consumer under the auspices of providing technical assistance to resolve any number of fictitious issues identified with the victims' computer.

5.     Defendant participated in a tech-support fraud conspiracy. In consultation and agreement with various coconspirators, Defendant acted as a middleman—both financially and in terms of communications—between call centers, located overseas, and individuals associated with a publisher of malicious pop-ups ("Company-1") which defrauded victims who were tricked by call centers into paying for unnecessary technical support services. Company-1 was a company incorporated in the Seychelles that published malicious pop-ups as a means of generating customer traffic for call centers. As a publisher of pop-ups, Company-1 and its affiliated personnel worked closely with individual call centers, middle-man brokers like Defendant, and call-routing platforms located around the world.

6.     Through his company, ABH Media LLC, Defendant participated in the tech-support fraud conspiracy by brokering the sale of tech-support leads on behalf of Company-1. These tech-support leads were, in reality, call traffic that had been generated by Company-1's malicious pop-up advertisements. Company-1 designed these pop-ups to render victims' computers temporarily inoperable—and often included misleading messages of viruses or other systemic infirmities. Because of these misrepresentations and the temporary disruptions caused by malicious pop-ups, victims would call toll-free numbers that would connect them to individual call centers, where technicians would defraud consumers under the auspices of providing technical-support services. As a result of selling these leads to call centers located all over the world, including in New Delhi, India, Defendant facilitated the victimization of thousands of computer users throughout the United States.

7.     Through his financial accounts and others associated with him, Defendant would transfer the proceeds of tech-support fraud to overseas accounts under the control of Company-1 and its affiliated personnel. Over the course of the conspiracy, Defendant conducted roughly 120 wire transfers from call centers, totaling approximately $14,497,065.43 in victim funds.

8.     The overall conspiracy, to the extent to which Defendant was involved, caused losses between $9,500,000 and $25,000,000. Defendant retains the right to argue that he should be held accountable for a loss amount between $3,500,000 and $9,500,000.

9.      On October 24, 2017, using his Skype handle washmypchj, MELLO sold Company-1 tech-support leads to the owner/operator of a conglomerate of tech-support companies headquartered in Charlotte, North Carolina, within the Western District of North Carolina.

10.     In or about May 2018, D.M., a resident of Bryson City, North Carolina, within the Western District of North Carolina, was victimized in connection with a Company-1 pop-up advertisement, causing her to lose approximately $2,000.00 as a result of the conspiracy.

11.     The conspiracy victimized more than ten individuals.

12.     A substantial part of the fraudulent scheme was committed from outside the United States.


DENA J. KING
UNITED STATES ATTORNEY

*[signature]*

MATTHEW WARREN
ASSISTANT UNITED STATES ATTORNEY

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

*[signature]*                                                                     DATED: 3/31/23

Charles E. James, Jr., Attorney for Defendant

3