IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO.: 3:23-CR-081-JAG

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| | ) | |
| HUNTER G. MELLO | ) | |
| | ) | |

The United States of America hereby submits this sentencing memorandum. For the reasons discussed herein, the Government recommends a sentence at the bottom end of the applicable Guideline range, or 63 months. The Government respectfully submits that the recommended sentence is sufficient, but not greater than necessary, to satisfy the goals of sentencing as set forth in Title 18, United States Code, Section 3553(a).

## I. <u>PROCEDURAL HISTORY</u>

On April 10, 2023, Defendant Hunter Mello pleaded guilty by Bill of Information with Conspiracy to Commit Wire Fraud (Count One). Docs. 1, 2. In the plea agreement, the parties agreed: the base offense level is seven; an 18- or 20-level enhancement should be applied based on the loss amount; a two-level enhancement should be applied for 10 or more victims; and a two-level enhancement should be applied for the scheme being conducted outside the United States. Doc. 2. The parties agreed in the Factual Basis that Defendant participated in the conspiracy from at least January 2017 through August 2020. Doc. 3.

On June 15, 2023, the United States Probation Office ("USPO") filed a draft presentence investigation report. Doc. 23. On November 1, 2023, the USPO filed the final PSR. Doc. 30 (the "PSR"). The parties did not file objections to the PSR.

As set forth in the PSR, § 2B1.1 provides for a base offense level of seven, and the USPO

applied the following enhancements: (a) a 20-level increase for loss exceeding $9.5 million, pursuant to § 2B1.1(b)(1)(K); (b) a two-level increase because the offense involved 10 or more victims, pursuant to § 2B1.1(b)(2)(A); and (c) a two-level increase because a substantial part of the fraudulent scheme was committed from outside the United States, pursuant to § 2B1.1(b)(10). Doc. 30 at 5-6. Following the application of level reductions for acceptance of responsibility and zero-point offender, the resulting total offense level was determined to be 26. *Id*. at 6. With no criminal history points, the resulting Guideline range is 63 to 78 months. *Id*. at 12.

## II. <u>FACTUAL BACKGROUND</u>

As set forth in the Factual Basis (PSR paragraphs 6-17), Defendant participated in a tech support fraud scheme through his role as a broker of malicious pop calls between pop up publishers and call centers. In other words, Defendant sold inbound technical support fraud calls to scam call centers in India on behalf of pop up publishers, who generate the call traffic. Defendant's primary client was a pop up publisher known as DMSS. Call centers paid pop up publishers like DMSS approximately $10-$15 per call, and Defendant received a portion of these fees from the publishers for selling the calls. The pop ups appeared on victim computers, locked the victim computers, displayed false messages regarding non-existent computer errors, and instructed the victims to call the number displayed on the pop ups for technical support, which routed the victim calls to various scam call centers. The pop ups locked or froze victim computers by making it impossible for computer users to click out of the pop up and resume normal computer use. When victims were routed to a call center, call center employees then relied on the false statements contained in the pop ups and further false statements to trick the victims into believing their computers could not be fixed unless they paid hundreds or even thousands of dollars to the call centers to fix the issue. No computer issues in fact existed and thus call centers did not perform real technical support.

Various independent call centers purchased victim call traffic from the conspirators. In other words, call centers paid Defendant and the pop up publishers to cause victims to believe that their computers required technical support through the use of malicious pop ups. Victims throughout the United States were defrauded of tens of millions of dollars by call centers on calls sold by Defendant. As a result of selling these calls to call centers located all over the world, including in New Delhi, India, Defendant facilitated the victimization of thousands of computer users throughout the United States. Malicious pop up publishers and Defendant collectively profited millions of dollars from this scheme.

To receive payments from individual call centers for the tech support fraud call traffic, DMSS often used Defendant as a payment intermediary. Through his financial accounts, Defendant would transfer the proceeds of tech support fraud received from call centers to accounts under the control of pop up publishers. Defendant retained his fees for selling the calls and transferred the monies owed to the pop up publishers on to the publishers. For example, between March 2016 and October 2019, financial records reflect that Defendant transferred $14,509,006.37 to DMSS as payments owed to DMSS from the call centers for the malicious pop ups. Defendant's bank accounts received at least $20,154,977.45 during the same time period. These funds represent payments from call centers for the tech support fraud call traffic. Financial analysis indicates that Defendant profited as much as $2 million from his participation in the conspiracy between March 2016 and October 2019.

Not every call sold by Defendant resulted in a loss to a victim, but a "successful" call sold by Defendant usually resulted in a victim loss of several hundred dollars to even one thousand dollars or more. Since victim transactions occurred between victims and individual call centers, the exact amount of victim loss is difficult to determine. The funds received by DMSS represented

the revenue to publishers, Defendant, and other co-conspirators for the tech support fraud call traffic. However, since the amounts referenced above represent the revenue to these conspirators and do not include the call centers' revenue, these figures represent a fraction of the total victim losses, and the total victim loss is likely in the tens of millions.

DMSS received $20,422,967.46 in revenue between March 2016 and October 2019, the dates during which Defendant participated in the conspiracy. Thus the conspiracy, to the extent to which Defendant was involved, caused losses between $9,500,000 and $25,000,000.

## III. LEGAL STANDARD

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008) (quotations and citations omitted). The advisory Guidelines are "the starting point and the initial benchmark[.]" *Gall v. United States*, 552 U.S. 38, 39 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice . . .. [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id*. at 351. Ultimately, however, the appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).

It is well-established that "[s]entencing judges may find facts relevant to determining a

Guidelines range by a preponderance of the evidence, so long as th[e] Guidelines sentence is treated as advisory and falls within the statutory maximum . . ..” *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008).

## IV. ARGUMENT

### A. The PSR properly calculated the loss amount sentencing enhancement.

The Government must establish the loss amount by a preponderance of the evidence, but the court need only make a “reasonable estimate” of the loss. *United States v. Shephard*, 892 F.3d 666, 673 (4th Cir. 2018) (citations omitted). The United States Sentencing Guidelines set forth that, for calculating loss under 2B1.1, “[l]oss is the greater of actual loss or intended loss.” U.S.S.G. § 2B1.1(b)(1)(A). Further, the court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined.” U.S.S.G. § 2B1.1(b)(1)(B). “Actual loss” is defined as “the reasonably foreseeable pecuniary harm that resulted from the offense.” U.S.S.G. § 2B1.1(b)(1)(C)(i). “Reasonably foreseeable pecuniary harm” is defined as “pecuniary harm that defendant knew or, under the circumstances, reasonably should have known, as a potential result of the offense.” U.S.S.G. § 2B1.1(b)(1)(C)(iv). The Application Notes of the United States Sentencing Guidelines sets forth additional information on how loss should be estimated for the purposes of U.S.S.G. § 2B1.1(b)(1). First, the court need only make a reasonable estimate of the loss. U.S.S.G. § 2B1.1 Note 3(B). Next, the Court is in a unique position to assess the evidence and estimate the loss based upon that evidence. *Id*. For this reason, the Court’s loss determination is entitled to appropriate deference. *Id*.

In addition, in a “jointly undertaken criminal activity,” the Defendant is responsible for “all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection

with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); *United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003). In *United States v. Duncan*, 578 F. App'x 183 (4th Cir. 2014), the Fourth Circuit found the defendant responsible for loss amounts generated by acts performed solely by other individuals in the conspiracy, even those committed by individuals unknown to the defendant. Defendant was held responsible for all losses generated by the conspiracy from the date the defendant joined the conspiracy. *Id*. at 187-90. Uniformity of method and coordination in execution supported the court's inclusion of the loss attributable to others involved in the criminal activity. *Id*. at 187–89 ("Given the structure, nature, and duration of the conspiracy, such losses clearly were within the scope of her agreement and reasonably foreseeable to her.") (*citing United States v. Otuya*, 720 F.3d 183, 191 (4th Cir. 2013).

The PSR calculated a loss amount of over $9,500,000 and imposed a 20-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(K) based on the Government's Factual Basis. Defendant reserved the right to object to the 20-level enhancement and argue that the loss reasonably foreseeable to Defendant was less than $9,500,000, resulting in an 18-level enhancement. Defendant himself received over $20 million and transferred $14,509,006.37 to DMSS, and DMSS generated $20,422,967.46 in revenue between March 2016 and October 2019. This amount, representing the gain to DMSS during the time period in which Defendant participated in the conspiracy, is clearly within the scope of the jointly undertaken criminal activity, in furtherance of the criminal activity, and reasonably foreseeable in connection with the criminal activity. Thus, the conspiracy, to the extent to which Defendant was involved, caused over $9,500,000 in losses. This figure far underrepresents the amount of actual loss to victims, as it is just the revenue generated on a pay per call basis of about $15 a call, not the hundreds to thousands of dollars paid by each victim on the calls sold by Defendant. Based on the above, the PSR correctly calculated

the loss amount and the Court should impose a 20-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(K).

**B. Application of the 18 U.S.C. § 3553(a) sentencing factors**

The Court must consider the § 3553(a) factors in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. The Court must also avoid unwarranted sentencing disparities.

The nature and circumstances of the offense and the need for the sentencing to reflect the seriousness of the offense and to promote respect for the law support a significant sentence. This was a sophisticated multi-year conspiracy that involved careful planning and significant infrastructure for the criminal enterprise, including testing, coding, and employing pop ups; the operation of a call routing platform; and millions of dollars of financial transactions. Millions of Americans experienced these pop ups and were tricked into calling the scam call centers. Many of those Americans were further defrauded into paying hundreds or even thousands of dollars each to "fix" a non-existent computer issue. The Defendant caused significant harm to those victims by both rendering their computers inoperable and assisting in defrauding them into paying significant sums for computer issues that were, in essence, created by himself and the publishers.

General deterrence is critically important in this case. Complex cybercrimes are some of the most technically difficult to identify and investigate. The difficulty of tracing such transactions significantly complicates law enforcement efforts to identify the perpetrators of these schemes, especially when they are located abroad, as here. The use of foreign call centers to scam victims in the United States is so omnipresent that many unfortunately likely accept that scam calls are a facet of modern American life. The individuals who perpetrate scam calls need to be deterred from doing so by the prospect of significant terms of imprisonment based on the harm that they

cause.

For the reasons above and the 3553(a) factors, the Government respectfully submits that the Defendant cannot meet his burden to support a downward variance or departure from the applicable Guideline range, and thus a Guideline sentence of 63 months of imprisonment is sufficient but not greater than necessary to achieve the sentencing factors set forth in 18 U.S.C. 3553(a).

## V. RESTITUTION

The Mandatory Victims Restitution Act provides that "the court shall order . . . that the defendant make restitution to the victim of the offense" upon conviction for "an offense against property . . . including any offense committed by fraud or deceit." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). Pursuant to 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, the Court must order restitution in this case. As part of the investigation, investigators identified a number of victims of Defendant. Docs. 48, 48-1. These are the same victims identified in the case of *United States v. Richard Nolan*, 3:23-CR-119. The Court should therefore order restitution as to these victims and find Defendant jointly and severally liable for the restitution amount with Richard Nolan, because Defendant and Nolan participated in the same conspiracy and caused the same victim losses. *See* 18 U.S.C. § 3664(h); *United States v. Dillard*, 641 F. App'x 252, 254 (4th Cir. 2016).

On May 1, 2023, the Court ordered the United States to implement certain alternative victim notification procedures. Doc. 22. These efforts have not yet resulted in the identification of additional victims. The United States is requesting that restitution remain open for an additional 90 days in the event that any further victims come forward through that process.

Restitution to identifiable wire fraud victims is mandatory unless the Court finds that either "the number of identifiable victims is so large as to make restitution impracticable; or []

determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3); *see also* U.S.S.G. § 5E1.1(b)(2). Both prongs apply in this case with respect to the unidentified victims. The sentencing process will be unduly burdened by the fashioning of an order of restitution regarding unidentified victims because of the complexity involved in ascertaining victims' identities and losses. The Government could not identify victims *en masse* based on financial or phone records. As a result, the victim associated with any particular tech support fraud call cannot be determined without individualized legal process directed at each call record. Manually identifying, proving, and notifying thousands of victims (or more) in order to meet the United States' burden of proof as to the losses sustained by the as yet-unidentified victims pursuant to 18 U.S.C. § 3664(e) would be unduly burdensome and would unduly burden the sentencing process. While there are thousands of victims of Defendant's fraud that have not been identified, the nature of the fraud scheme and the evidence available to the Government makes further identification efforts impracticable. Thus, the Government requests that the Court order restitution as to the identified victims and make a finding that although the Court recognizes that there are thousands more of unidentified victims, that further restitution regarding the unidentified victims is impracticable. Thus, the Government requests that, at the conclusion of the 90-day restitution extension, the Court order restitution as to the identified victims and make a finding that although the Court recognizes that there are thousands more of unidentified victims, that further restitution regarding the unidentified victims is impracticable.

## VI. FORFEITURE AND FINE

The United States is seeking an order of forfeiture in the amount of $1,500,000, which represents Defendant's personal profits from the fraud scheme. Defendant has executed a consent order of forfeiture for the same. Doc. 14.

The Court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a). The fine range for this offense is from $25,000 to $250,000. PSR ¶ 81. USPO concluded that Defendant appears to have the resources to make an immediate monetary payment of $100,000. PSR ¶ 70. The United States therefore requests that the Court impose a Guideline range fine.

## VII. CONCLUSION

For the foregoing reasons, the United States respectfully submits that a sentence at the low end of the applicable Guideline range, or 63 months, is sufficient but not greater than necessary to serve the purposes of sentencing outlined in 18 U.S.C. § 3553(a).

Respectfully submitted, this 3rd day of February, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

*s/ Matthew Warren*
Matthew Warren
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.344.6222
E-mail: matthew.warren@usdoj.gov

**CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 3rd day of February, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

*s/ Matthew Warren*
Matthew Warren
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.344.6222
E-mail: matthew.warren@usdoj.gov